# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JERRY MOISES CAICEDO-AVILA,

    Petitioner,

vs.                                     Civil Case No. 8:18-CV-2671-T-27AAS
                                       Crim. Case No. 8:17-CR-286-T-27AAS

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (cv Dkt. 1), the United States' opposition (cv Dkt. 6), and Petitioner's Reply (cv Dkt. 11). Upon consideration, Petitioner's § 2255 motion is **DENIED**.

Petitioner pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States (Count One) and possession with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States (Count Two). He was sentenced to concurrent 120 month terms, followed by 5 year concurrent terms of supervised release (cr Dkt. 92). He did not appeal.

In his § 2255 motion, Petitioner raises two claims of ineffective assistance of counsel:

**Ground One:** "Defense counsel's deficient performance at sentencing resulted in both a longer than necessary punishment and the findings of facts, the estoppel effect of which has continuing detriment to Mr. Caicedo-Avila."

**Ground Two:** "The Constitution requires the defense counsel advise the defendant of the benefit and detriment of all material consequences of direct appeal. An attorney's failure to inform the defendant of all material consequences of not appealing amounts to constitutionally inadequate performance."

(cv Dkt. 1).

## Standard for Ineffective Assistance of Counsel Claims

A petitioner making a claim of ineffective assistance of counsel must prove: (1) deficient performance by counsel; and (2) prejudice resulting therefrom. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For the first prong, it must be determined whether counsel's representation "fell below an objective standard of reasonableness." *Id.* at 468. Judicial scrutiny of counsel's performance is highly deferential and counsel's conduct is entitled to a strong presumption that it fell within the range of reasonable professional assistance. *Weeks v. Jones*, 26 F.3d 1030 (11th Cir. 1994). Even if counsel's performance was deficient in some respect, a petitioner is not entitled to relief unless the second prong is satisfied. *United States v. Hilliard*, 752 F.2d 578 (11th Cir. 1985).

Under the second prong, a petitioner must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In other words, the petitioner must establish that he was prejudiced by counsel's deficient performance. *Id.* Both components of the *Strickland* standard need not be addressed if an insufficient showing is made on either. *Weeks*, 26 F.3d at 1037.

**GROUND ONE:**

In Ground One, Petitioner contends that counsel was ineffective in failing to object to the court's calculation of the quantity of cocaine on board his vessel, specifically counsel's failure to object to the court's reliance on "the parties' factual stipulation" and the court's failure "to ensure any stipulation is reliable." (cv Dkt. 1 at 13). He claims that an objection would have resulted in a lower quantity attributable to him, arguing that "90%" of the quantity for which he was held accountable was "objectively unreasonable" and that he would not have been subjected to a minimum mandatory term. (Id.). He also contends that counsel should have objected to the court not applying USSG Amendment 790. (Id.). Petitioner's contentions are without merit.

First, he was safety-valve eligible, and therefore could have been sentenced without regard to the statutory minimum mandatory penalty, regardless of whether counsel had objected to drug quantity. (cr Dkt. 79, Presentence Investigation Report ("PSR") ¶ 22)); USSG § 5C1.2(a). Second, he was sentenced in November 2017, and the 2016 Guidelines Manual applied, which incorporated Amendment 790. USSG § 1B1.11; (PSR ¶ 19). Finally, any objection to drug quantity would have been meritless, based on Petitioner's post-*Miranda* admissions. Failing to make a meritless objection does not constitute deficient performance. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015).

During sentencing, Petitioner was entitled to effective assistance of counsel. *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992).[1] As in *Wilson*, "the record before the court [is] sufficient to determine that [Petitioner] was not denied effective assistance of counsel." *Id.* First, his guilty plea necessarily admitted that he committed the offenses he was pleading to. Second, he admitted in his post-*Miranda* statements that he was hired to transport drugs from Ecuador to Guatemala and was the load guard. Third, he told law enforcement there were 27 bales on board the go-fast vessel. In his Presentence Investigation Report, the quantity of cocaine for which he was held accountable was explained:

> During his post-*Miranda* statement, Caicedo-Avila stated that he was offered 60 million Colombian pesos to transport a load of drugs from Ecuador to Guatemala. Caicedo-Avila stated that he was hired to guard the drugs and help with the fuel and food onboard the GFV. Caicedo-Avila stated that he accepted the job and received five million Colombian pesos as an advanced payment. Caicedo-Avila reported that there were 27 packages of unknown drugs on board their GFV. He further advised that when they saw that CGC WAESCHE, Mero-Sornoza gave the order to jettison the drugs and electronics.

(PSR ¶ 13).

---

[1] On behalf of Petitioner, counsel made a thoughtful and comprehensive mitigation argument, summarizing Petitioner's background and characteristics, his difficult upbringing, limited education, impoverished state, his small child and family who depended on him, his motivation for participating in the offense, and the sentence received by Calderon-Alay. (cr Dkt. 101 at 5-7). His request for a variance was granted. Petitioner, in allocution, apologized "for having committed this crime," explaining that he "did it out of necessity." (Id. at 7).

3

According to Petitioner, there were 27 bales of cocaine on board. (PSR ¶ 15 ("based on Caicedo-Avila's report of 27 bales of cocaine onboard the GFV")). The bales jettisoned from the boat, "based on the case agent's training and experience," were "consistent with bales of cocaine typically transported on GFV's in the Eastern Pacific ocean," and amounted to 540 kilograms. (Id.). And the factual basis supporting his guilty plea provided that the jettisoned bales "appeared to be the dimensions of a standard bale containing twenty (20) kilograms of cocaine." (cv Dkt. 6 at 1-2) (quoting (cr Dkt. 47 at 3)).

Petitioner never questioned the factual basis underlying his guilty plea. Indeed, during sentencing, in support of his request for a variance, counsel alluded to Petitioner's "truthfulness" with respect to reporting the quantity of cocaine on board the boat:

> The load amount in this case, with the Government being able to determine that amount, is attributed to my client and his truthfulness to them of that higher amount which he was charged with and which the others are charged with, because he was, quite frankly, just truthful about 27 bales and how many kilos were in those bales, and I think it turned out to be 540 kilograms.

(cr Dkt. 101 at 7). And during his change of plea, Petitioner admitted to having "participated in a smuggling venture involving possession with intent to distribute 5 or more kilograms of cocaine." (cr Dkt. 99 at 21).[2] Finally, the court explained its rationale for its sentence:

> I am mindful that a co-defendant, Mr. Calderon-Alay, was sentenced to 120 months, and based on the Government's response to my question, I don't see any significant distinction between this defendant and Mr. Calderon-Alay in terms of culpability. I find in this case, as I have in many, many other cases involving mariners interdicted on the high seas, that a term of imprisonment commensurate with the statutory minimum mandatory is an appropriate sentence and which is fair and which supports the statutory purposes of sentencing.

(cr Dkt. 101 at 9-10).

---

[2] Accordingly, his contention that he did not know what was in the bales is foreclosed by his guilty plea. *Id.*

In sum, Petitioner himself provided the information from which the quantity of cocaine was calculated. Since the bales were jettisoned, the case agent could only estimate the quantity of cocaine in the 27 bales, based on his experience and training. The material facts, therefore, were undisputed. There was nothing for counsel to investigate beyond his client's statements.

Like in *Wilson*, the problem with Petitioner's claim "is that he has not suggested any factual basis upon which counsel could have relied" in objecting to the quantity of cocaine. 962 F.2d at 998. His conclusory allegation of ineffective assistance is therefore insufficient. He does not show that counsel's performance was deficient, other than his own bald assertion that counsel was ineffective. Nor does he show that if an objection had been made, there is a reasonable probability that his sentence would have been different. Ground One is therefore due to be dismissed as without merit.

### New Claim Raised in Reply

In his Reply, Petitioner attempts to add new claims that counsel failed to investigate the drug quantity and should have "advised his client on what to admit (only that which he knew personally)." (cv Dkt. 11 at 5). These claims will not be considered since they were raised for the first time in his Reply. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 n. 11 (11th Cir. 2009) ("Because they raised this argument for the first time in their reply brief, we treat this argument as waived."); *United States v. Evans*, 473 F.3d 1115, 1120 (11th Cir. 2006); *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("As for reply briefs, this Court follows this same rule and repeatedly has refused to consider issues raised for the first time in an appellant's reply brief.").

Moreover, his attempt to raise these new claims is not authorized by the rules. Rule 2(b)(1) of the Rule Governing Section 2255 Proceedings requires that his motion "specify all the grounds for relief available." And his motion may not be amended as a matter of course by including a new claim in his Reply. *See* Fed. R. Civ. P. 15(a) (party permitted to amend pleading once "as a matter of course" at any time before a responsive pleading is served or, otherwise, only by leave of court

or by written consent of the adverse party); Rule 12 of the Rules Governing Section 2255 Proceedings (Federal Rules of Civil Procedure not inconsistent with the Rules Governing Section 2255 Proceedings may be applied).[3] Even if the claims are considered, they are without merit.

By pleading guilty, Petitioner waived all non-jurisdictional claims, including claims of pre-plea ineffective assistance which do not relate to the knowing and voluntary nature of his guilty plea. *Wilson v. United States*, supra. Since these claims are not about his decision to plead guilty, he waived his contentions that counsel did not conduct an adequate investigation and was deficient in his advice on what to admit.

## GROUND TWO:

In Ground Two, Petitioner contends that his attorney failed to advise him "of the benefit and detriment of direct appeal." (cv Dkt. 1). After careful consideration, and a review of the record, this contention is without merit.

A lawyer who fails to comply with instructions from the client to appeal acts in a professionally unreasonable manner, and prejudice is presumed. *Gomez-Diaz v. United States*, 433 F.3d 788, 790 (11th Cir. 2005) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). But this case is <u>not</u> about counsel's failure to appeal after being instructed to. This case is about whether counsel had a constitutional obligation to consult about an appeal, and if so, whether he satisfied that obligation.

### *No constitutional duty to consult about an appeal*

The threshold question is whether Petitioner's attorney was constitutionally obligated to consult with him about an appeal. "A criminal defense lawyer is not under a *per se* constitutional

---

[3] This Court is mindful of its responsibility to address and resolve all claims raised in Petitioner's motion. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992). That said, nothing in *Clisby* requires or suggests consideration of a claim raised for the first time in a reply.

obligation to consult with his or her client about an appeal." *Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007) (citing *Flores-Ortega*, 528 U.S. at 479). Indeed, there is no "bright-line" rule that counsel must always consult with their client regarding an appeal, and *Strickland* "rejects mechanistic rules governing what counsel must do." *Flores-Ortega*, 528 U.S. at 479. As the Court reasoned, even if counsel does not consult with the client about an appeal, "[w]e cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense." *Id.* (citations omitted) (emphasis in original).[4]

A constitutional duty to consult with the client about an appeal arises "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. *See also Palacios v. United States*, 453 F. App'x 887, 889 (11th Cir. 2011).

First, Petitioner does not contend that he instructed his attorney to appeal or even expressed an interest in appealing. And, as noted, by pleading guilty, Petitioner waived any non-jurisdictional defenses. *Wilson v. United States*, supra. And while his guilty plea preserved his appellate rights,

---

[4] The Court provides two examples, somewhat analogous to this case:

> For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," (citation omitted), as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information.

*Id.* at 479-80.

the record demonstrates there were no non-frivolous grounds for appeal. The facts were undisputed. There were no objections to the PSR or the application of the advisory sentencing guidelines. (cr Dkt. 101 at 4). Petitioner's advisory guidelines range was 135 to 168 months, but he received a 120 month sentence. (PSR ¶ 58; cr Dkt. 92). As discussed, his base offense level was calculated based on his own account that there were 27 bales of cocaine on board his go-fast vessel. (PSR ¶¶ 15, 21). His role in the offense was not enhanced, notwithstanding that he was the "load guard." (Id. at ¶ 24). He was safety valve eligible. He received all three levels for acceptance of responsibility. (Id. at ¶¶ 28-29). His counsel's request for a downward variance was granted, and he received the identical sentence his similarly situated co-defendant, Calderon-Alay, received, and 12 months less than the Captain's sentence. (Id. at 2; cr Dkt. 101 at 5).

Considering his guilty plea and that he received a sentence below his advisory guidelines range, identical to his similarly situated co-defendant's, and that there was, as will be discussed, the prospect of earning a Rule 35 sentence reduction if he continued to cooperate, there was no reason to think that a rational defendant would have wanted to appeal. Under the circumstances, counsel was not under a constitutional obligation to consult with him about an appeal. *Otero*, 499 F.3d at 1271.

### *There was an adequate consultation about an appeal*

Assuming a constitutional duty arose, the question is whether the attorney consulted with Petitioner regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes. *Flores-Ortega*, 528 U.S. at 478; *Gomez-Diaz*, 433 F.3d at 792.

Petitioner acknowledges that his attorney spoke with him about his right to appeal before and after sentencing, and opined that there was nothing to appeal. And the court explained his right to an appeal immediately after imposing sentence, and he had no questions about that right. (cr Dkt. 101 at 11-12) ("Listen carefully to his advice. It is, however, your decision, not his, but you must let

8

him know within days whether you wish to appeal or not, and he will file that appeal if you request him to do so . . .").[5] Petitioner's conclusory contentions do not overcome the strong presumption that counsel's advice and consultation fell within the range of reasonable professional assistance. *Weeks*, 26 F.3d at 1036.

Petitioner apparently agreed with counsel's advice that there was no basis to appeal, as he does not contend that he expressed any interest in appealing, instructed his attorney to file an appeal, or that his attorney ignored his expressed desire to appeal. *See Devine v. United States*, 520 F.3d 1286, 1289 (11th Cir. 2008) (where defendant understands attorney's opinion that an appeal would be futile and says nothing to suggest that he was interested in appealing anyway, court's finding that defendant did not reasonably demonstrate to attorney that he was interested in appealing not erroneous); *Gaston v. United States*, 318 F. App'x 750, 752 (11th Cir. 2008) (same).

Where, as here, Petitioner admits that counsel conferred with him about his right to appeal, counsel acted unreasonably only if he ignored Petitioner's wishes to appeal. *Flores-Ortega*, 528 U.S. at 480. The court is mindful that "simply asserting the view that an appeal would not be

---

[5] The sentencing transcript confirms that the court advised Petitioner of his right to appeal immediately after sentence was imposed, as well as his right to be represented by counsel on appeal if he was unable to afford counsel:

> THE COURT: Señor, you have 14 days within which to appeal to a higher court. You're entitled to be represented by counsel, and if you're not able to pay a lawyer, the Court will appoint a lawyer to represent you on appeal free of charge, and the clerk will accept your notice of appeal without payment of a filing fee. Your attorney will discuss and explain to you the advantages and disadvantages of an appeal, not the least of which is the impact an appeal could have on your eligibility for a Rule 35 motion which you hope to earn in the future from the Government.
>
> Listen carefully to his advice. It is, however, your decision, not his, but you must let him know within days whether you wish to appeal or not, and he will file that appeal if you request him to do so, and if you waive your right to appeal he will document that so there's no misunderstanding about your decision in that regard.
>
> Do you have any questions about your appellate rights, sir?
>
> THE DEFENDANT: No.

(cr Dkt. 101 at 11-12).

successful does not constitute 'consultation' in any meaningful sense." *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007). In the context of that case, that proposition is understandable, since Thompson expressed unhappiness with his sentence as compared to his co-defendants'. Unlike the defendant in *Thompson*, however, as noted, Petitioner received the same sentence as his similarly situated co-defendant, Calderon-Alay.

Distilled to its essence, Petitioner contends that counsel's consultation about an appeal was inadequate. Specifically, he complains that counsel did not advise of him of the advantages and disadvantages of an appeal, listing several aspects of an appeal that he contends should have been addressed by counsel. (cv Dkt. 1 at 14). Considering the record and the sentence Petitioner received, however, it was reasonable for counsel to have advised him that there was no basis to appeal. And the topics he contends should have been discussed are fanciful at best, and at worst, without merit, if not frivolous. Accordingly, even if counsel's consultation was less than meaningful, Petitioner is unable to show that he was prejudiced.

First, assuming that counsel erroneously advised Petitioner that he had waived his right to appeal, the court's instructions on his right to appeal cured any defect in that advice. Second, by pleading guilty, he did waive all non-jurisdictional challenges to the constitutionality of his conviction, save only an attack on the voluntary and knowing nature of the plea could be challenged, which he does not list as a ground counsel should have discussed. *Wilson*, 962 F.2d 996.

Considering the record, further evidentiary inquiry is unnecessary.[6] First, Petitioner's allegations are conclusory and contradictory, essentially nothing more than unsupported

---

[6] Included in the United States' response is the affidavit of Petitioner's former counsel (cv Dkt. 6, Exhibit A). Petitioner contends "there are dueling affidavits between Mr. Caicedo and his attorney Gerasimos Theophilopolos" and that an evidentiary hearing is therefore required. (cv Dkt. 11 at 3). I disagree.

First, Petitioner's claims can be resolved without considering counsel's affidavit. Second, even if the affidavit is considered, specifically counsel's averment that he discussed Petitioner's appellate rights with him during the review of his PSR with an interpreter, and again after sentencing, those averments are consistent with Petitioner's

10

generalizations. For example, on the one hand, he contends that "[c]ounsel was ineffective in [not] filing a motion to appeal within 14 days *and failed to disclose that I had a right to appeal.*" (cv Dkt. 1 at ¶ 11(d)) (emphasis added). And in his Reply, he alludes to counsel's *"failure to consult with Mr. Caicedo after sentencing."* (cv Dkt. 11 at 4). In the "supporting facts" section of Ground Two, however, he contradicts those assertions by alleging that "[b]efore and after sentencing, defense counsel told Mr. Caicedo-Avila that there was nothing to appeal and that he had waived his right to appeal anyway." (cv Dkt. 1 at 14). Moreover, the court's advisement of his right to appeal effectively substituted for any duty counsel had, under the circumstances. *Flores-Ortega*, 528 U.S. at 479–80.

In determining whether counsel acted reasonably, the totality of the circumstances are considered, including the "highly relevant factor" that Petitioner pleaded guilty, "because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* at 480; *Otero*, 499 F.3d at 1270. And his below guidelines sentence dispels any notion that he expressed dissatisfaction with his sentence. Indeed, contradicting his contention that his counsel "knew [he] wanted the 97 month sentence received by his co-defendant," neither of his co-defendants received a 97 month sentence. Mero-Sornoza received 132 months (cr Dkt. 88) and Calderon-Alay received concurrent 120 month terms (cr Dkt. 76).[7]

---

acknowledgement that counsel spoke with him about his appellate rights before and after sentencing. And as for counsel's averments that Petitioner told him "if he received 120 months then he did not wish to appeal," reiterated that just before sentencing, and after sentencing expressed satisfaction with his sentence and "for the third time [] requested that I not file an appeal," Petitioner does not contest or counter those averments in his Reply. There are not, therefore, contrary to Petitioner's claim, dueling affidavits.

[7] Since Operation Panama Express has brought dozens, if not hundreds of "boat cases" into the Tampa Division of the Middle District of Florida, it has been the experience of the undersigned that when Spanish speaking defendants in these cases file motions to vacate, someone, likely a fellow inmate with knowledge of what allegations trigger the requirement of an evidentiary hearing, but without accurate knowledge of the proceedings and underlying facts, drafts these motions. And that appears to be the case with Petitioner's motion and Reply, as evidenced by the factual inaccuracies and inconsistencies discussed. This undermines the reliability of Petitioner's supposed sworn contentions and mitigates against spending limited resources to conduct an evidentiary hearing, absent specific factual dispute. Mindful of *Gomez-Diaz v. United States*, 433 F3d 788 (11th Cir. 2005), the undersigned does not hesitate to conduct evidentiary hearings when defendants contend that counsel failed or refused to file an appeal after being asked to do so.

Further, the record demonstrates, consistent with the court's advice, that there was a good reason not to pursue an appeal. An appeal could impact his eligibility for a Rule 35 motion based on substantial assistance.[8] Indeed, counsel represented to the court at sentencing: "In addition, he has had several proffers and they've been fruitful, which hopefully down the road he'll be receiving a Rule 35." (cr Dkt. 101 at 7). And the prosecutor informed the court: "And with regards to cooperation, we're not filing a 5K at this time but we are hopeful that he will provide information that will lead to a Rule 35. We are not there yet, but we are hopeful that eventually it will be at that point. Again, Your Honor, we feel a guideline range sentence is appropriate in this case." (Id. at 8).[9]

To establish prejudice under *Strickland*, Petitioner "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 485.

In conclusory fashion, Petitioner contends that his decision not to appeal would have been different if his attorney had explained certain things. *See* (cv Dkt. 1 at 14) ("If counsel had properly instructed Mr. Caicedo-Avila on the law and legal consequences of not filing on [sic] appeal, then Mr. Caicedo-Avila would have appealed."). But he does not identify any non-frivolous grounds for

---

At the same time, when it is apparent, as here, that a defendant engages someone else to draft his § 2255 motion, and the face of the pleadings demonstrates that the factual assertions are inaccurate and inconsistent, conducting an evidentiary hearing to clear up those inaccuracies and inconsistencies requires considerable expense and causes inconvenience to the United States Marshals Service and United States Attorney. In sum, this record does not warrant evidentiary inquiry into Petitioner's conclusory and inconsistent contentions, particularly considering his acknowledgment that counsel discussed his right to appeal with him before and after sentencing, and he does not contend that he asked counsel to appeal or expressed any interest in appealing.

[8] The court advised Petitioner: "Your attorney will discuss and explain to you the advantages and disadvantages of an appeal, not the least of which is the impact an appeal could have on your eligibility for a Rule 35 motion which you hope to earn in the future from the Government." (cr Dkt. 101 at 11).

[9] While the record does not explain how an appeal could impact Petitioner's eligibility for a Rule 35 motion, it is common knowledge in the Middle District of Florida that the U.S. Attorney's Office will not file a Rule 35 motion if a defendant appeals, which explains the court's statement: "Your attorney will discuss and explain to you the advantages and disadvantages of an appeal, *not the least of which is the impact an appeal could have on your eligibility for a Rule 35 motion which you hope to earn in the future from the Government.*" (Id. at 11).

appeal that he wanted to pursue, or that he expressed an interest in appealing to counsel.[10] While he is not required to demonstrate that a "hypothetical appeal might have had merit," he must demonstrate that "but for counsel's deficient conduct, he would have appealed." *Flores-Ortega*, 528 U.S. at 486. In this regard, he fails. The purported issues and consequences of not appealing he contends counsel should have discussed are fanciful at best, and at worst, unsupported and frivolous.

For example, Petitioner's subjective belief that his sentence was unfair would not have been a basis to appeal, especially considering that the sentence was below his advisory guidelines range and identical to his similarly situated co-defendant. And his veiled contention that his offense had an insufficient nexus with the United States is contrary to settled law, not an issue counsel would have reasonably considered as a basis to appeal, or even worthy of consideration in deciding whether to appeal. *See United States v. Estupian*, 453 F.3d 1336 (11th Cir. 2006); *United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002).[11]

---

[10] Petitioner lists purported appellate issues and consequences of not appealing which he contends counsel should have explained, including:
- he "reiterated to defense counsel that he did not believe the sentence was fair, especially since the conviction resulting from an arrest unrelated to United States territory could not be squared with any concept of justice;"
- "if he did not file a direct appeal, then he forfeited any future challenge to the conviction or sentence or waived any future challenge to the conviction or sentence;"
- "if he appealed, another attorney would be appointed and his transcripts would be provided both without charge;" and
- "given the Eleventh Circuit's decision on how retroactively applicable rules are to be presented . . . that if Mr. Caicedo-Avila did not appeal even if futile, then he foreclosed his ability to raise certain meritorious challenges in the future."

(cv Dkt. 1 at 14).

In his Reply, Petitioner adds that counsel failed to "explain the procedural default consequences of failing to appeal," "explain the failure to appeal's impact on other retroactive changes in the law," explain that the district court at sentencing by not making individualized findings would impact both his eligibility for future Guidelines adjustment and his BOP custody classification," "inform him of a substantial circuit split, that, if resolved in his favor would extinguish the mandatory minimum," and "tell [him] that with an appeal, his transcript would be readily available to him though he was indigent." (cv Dkt. 11 at 4-5).

[11] *See also United States v. De Armas*, 180 F. App'x (11th Cir. 2006); *United States v. Garcia*, 182 F. App'x 873 (11th Cir. 2006); *United States v. Urena*, 140 F. App'x 879 (11th Cir. 2005).

Of course, by not appealing, a defendant procedurally defaults any claims concerning application of his guidelines or sentencing errors. But Petitioner's sentencing guidelines were correctly applied and there were no sentencing errors. And by not appealing, he did not foreclose a cognizable collateral challenge to his conviction and sentence under 28 U.S.C. § 2255. As for the appointment of an attorney on appeal and free transcripts, the court advised him after imposition of sentence of his right to appellate counsel free of charge and that he could file his notice of appeal without paying the filing fee. (cr Dkt. 101 at 11-12). And he had already been deemed indigent for purposes of proceeding *in forma pauperis* on appeal. Finally, Petitioner does not identify what Circuit split exists relevant to his conviction and sentence, and what, if any, Eleventh Circuit retroactive rules counsel should have explained, or what findings the court should have made at sentencing. Counsel's duty to consult about an appeal does not require him to anticipate changes in the law. *United States v. Levy*, 391 F.3d 1327, 1334 (11th Cir. 2004).

In summary, Petitioner acknowledges that his attorney consulted with him about an appeal before and after sentencing. And counsel correctly opined to him that there was no basis on which to appeal. Counsel therefore fulfilled his duty to consult with Petitioner about an appeal and thereby made a reasonable effort to determine his wishes. *See Medina v. United States*, 167 F. App'x 128, 134-35 (11th Cir. 2006) (where client neither instructs attorney to appeal nor asks that an appeal not be taken, relevant question in determining whether attorney performed deficiently by not filing the appeal is whether counsel in fact consulted with the defendant about an appeal). Where, as here, counsel consults with the client about an appeal, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 478.

By virtue of Petitioner's guilty plea, the sentence he received, and the court's advisement of his right to appeal and the appointment of counsel, counsel did not have a constitutional duty to consult with him about an appeal. Even if counsel had a duty, Petitioner admits that counsel discussed an appeal with him before and after sentencing and opined with good reason that there was no basis on which to appeal, advice Petitioner agreed with at the time, since he did not direct counsel to file an appeal or express an interest in appealing. *Flores-Ortega*, 528 U.S. at 477 (". . . a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently."). Petitioner has not shown deficient performance or prejudice resulting from any claimed deficient performance. Ground Two is therefore due to be dismissed.

**Evidentiary Hearing Not Required**

Petitioner's allegations, even if true, do not entitle him to relief and therefore do not warrant an evidentiary hearing. *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002) ("[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim."). While he need only allege, not prove, "reasonably specific, non-conclusory facts that, if true, would entitle him to relief," a hearing is not required where, as here, "the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014). More specifically, Petitioner's contradictory, conclusory allegations of ineffective assistance of counsel and unsupported generalizations are not sufficient to require evidentiary inquiry. And he fails to rebut or counter counsel's averments that he expressly told counsel that he did not want to appeal.

## Certificate of Appealability

Petitioner is granted a certificate of appealability on Ground Two.[12] Jurists of reason could disagree on whether counsel had a constitutional duty to consult with Petitioner about an appeal, and if so, whether counsel satisfied that duty, considering *Thompson v. United States*, supra. He is not entitled to a certificate of appealability on Ground One. Jurists of reason would not find the assessment of that claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## Conclusion

Petitioner Caicedo-Avila's § 2255 motion is **DENIED**. The Clerk is directed to enter judgment in favor of the United States and **CLOSE** this case.

**DONE AND ORDERED** this 23rd day of January, 2020.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Petitioner, United States Attorney's Office

---

[12] "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).